# UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS (SPRINGFIELD)

In re:

STEVEN ALLEN WOODRUM,                              Case No. 23-70583

            Debtor.                                Chapter 11
_____/
                                                                                              Judge Mary P. Gorman

FARM CREDIT SERVICES OF AMERICA,
PCA,

           Plaintiff,

v.                                                 Adversary Proceeding No.

STEVEN ALLEN WOODRUM,

           Defendant.
_____/

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523

Plaintiff, FARM CREDIT SERVICES OF AMERICA, PCA ("FCS" or "Plaintiff"), by its attorneys, Howard & Howard Attorneys PLLC, files this Complaint against Steven Allen Woodrum to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. §523, stating as follows:

### THE PARTIES

1. Plaintiff, Farm Credit Services of America, PCA, is a federal instrumentality formed and organized in accordance with the provisions of the Agricultural Credit Act of 1987.

2. Upon information and belief, Defendant, Steven Allen Woodrum ("Debtor" or "Woodrum") is an individual residing at 1595 Highway 123, Alexander, Morgan County, Illinois.

**VENUE AND JURISDICTION**

3. The above-captioned Chapter 11 proceeding was commenced by the filing of a voluntary petition (the "Bankruptcy Petition") on July 20, 2023 (the "Petition Date").

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) over which this Court has jurisdiction pursuant to 28 U.S.C. §1334.

6. FCS is a creditor of the Debtor.

7. FCS timely filed a proof of claim on September 27, 2023 (Claim No. 6-1).

**FACTS COMMON TO ALL COUNTS**

8. Upon information and belief Prairieland FS, Inc. ("Prairieland FS") is an Illinois corporation, headquartered at 1132 Veterans Drive, Jacksonville, Morgan County, Illinois.

9. Upon information and belief, Prairieland FS is a full service agricultural and energy supplier.

10. Upon information and belief, Prairieland FS is a creditor of Woodrum.

11. Upon information and belief, Woodrum's indebtedness to Prairieland FS is in the amount of millions of dollars.

12. Upon information and belief Michael D. Stroup ("Stroup") is an individual residing in Springfield, Sangamon County, Illinois.

13. Upon information and belief, Stroup is an employee of Prairieland FS.

14. Upon information and belief, Stroup's employment responsibilities at Prairieland FS include lending and providing service to Prairieland FS's customers and debtors.

*January 11, 2018 Promissory Note and Loan Agreement ("Note No. 4180")*

15. Upon information and belief, beginning as early as December 2017, Stroup and

Woodrum discussed opportunities for Woodrum to obtain financing for his farm operation that was under financial stress, including but not limited, to seeking financing from FCS.

16. On or about January 4, 2018, Stroup completed an FCS Financing Application ("Financing Application") by hand on behalf of Woodrum.

17. The Financing Application sought to refinance a 2018 Case IH 2150 Planter, Serial No. YHS074106, a 2016 Case IH 370 Steiger Tractor, Serial No. ZGF308065, a 2018 Case IH RB565 Round Baler, Serial No. YHN196682, and a 2018 Case IH DC102 Disc Mower, Serial No. YHN263879 (collectively, "the Beard Equipment") that was purportedly previously purchased by Woodrum from Beard Implement Company.

18. Woodrum executed the Financing Application and verified its contents to be true.

19. Along with the Financing Application, Stroup submitted to FCS a December 7, 2017 Retail Purchase Order from Beard Equipment Implement Company (the "Beard Purchase Order"), purportedly showing Woodrum's previous purchase of the Beard Equipment from Beard Equipment Implement Company for the total price of $564,000.00. A true and correct copy of the Retail Purchase Order is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 1."

20. Stroup prepared a document titled "12/19/2017 – Post harvest update Balance Sheet" (the "2017 Balance Sheet") for Woodrum's farm operation using Prairieland FS's form Balance Sheet.

21. The 2017 Balance Sheet listed the Beard Equipment, including their serial numbers, as "100.00%" owned and purchased by Woodrum in 2017, with a total value of $564,000.00.

22. Along with the Financing Application and Beard Purchase Order, Stroup submitted the Financing Application, the Beard Purchase Order, 2017 Balance Sheet, and Woodrum's tax

returns to FCS.

23. In reliance on the Financing Application, the Beard Purchase Order, and the 2017 Balance Sheet, FCS agreed to refinance the Beard Equipment in the total amount sought of $564,000.00.

24. On January 11, 2018, Woodrum entered into Promissory Note and Loan Agreement No. XXXXX-XXX4180 with FCS, in the principal sum of $564,000.00, to refinance his cash purchase of the Beard Equipment from Beard Implement Company. A true and correct copy of the January 11, 2018 Promissory Note and Loan Agreement (collectively, "Note No. 4180") is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 2."

25. On January 11, 2018, Woodrum entered into a Security Agreement with FCS, pledging the Beard Equipment as collateral to secure Note No. 4180. A true and correct copy of the Security Agreement is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 3."

26. On January 11, 2018, FCS filed a UCC-1 Financing Statement with the Illinois Secretary of State, specifically identifying the Beard Equipment as its collateral. A true and correct copy of the January 11, 2018 UCC-1 Financing Statement is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 4."

27. On January 10, 2018, Prairieland FS executed a Chattel Subordination Agreement, which subordinated Prairieland's liens and security interests it then had or acquired in the future as to the Beard Equipment in favor of FCS. A true and correct copy of the Chattel Subordination Agreement for the Beard Equipment is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 5."

28. On January 11, 2018, FCS issued a check numbered 1147022 and in in the amount

of $564,000.00 made payable to Woodrum.

29. Upon information and belief, on January 16, 2018, Woodrum negotiated FCS check no. 1147022 and deposited the full amount at The Farmers State Bank and Trust Company in Jacksonville, Illinois.

30. Upon information and belief, Woodrum subsequently spent all $564,000.00 obtained from FCS on farm-related expenses, including 2018 cash rent payments, that he otherwise would have had to borrow from Prairieland FS.

31. FCS believed that it was the holder of a perfected purchase money security interest in the Beard Equipment. (*See* Exhibit A, Exs. 2-5).

32. FCS performed all of its obligations under Note No. 4180.

33. Pursuant to Section 5 of Note No. 4180, an "Event of Default" occurs if Woodrum fails to make all payments when due. (Exhibit A, Ex. 2, pp. 2-3).

34. Woodrum failed to make the February 1, 2020 annual installment payment required by the terms of Note No. 4180 and all payments required thereafter.

35. Woodrum defaulted on Note No. 4180 by failing to make the February 1, 2020 annual installment payment required by the terms thereunder.

36. Pursuant to the terms of Note No. 4180, upon any "Event of Default", FCS may, among other things, declare all obligations immediately due and payable, and take possession of the Beard Equipment. (Exhibit A, Ex. 2, p. 3).

37. On February 27, 2020, as a result of Woodrum's default, FCS declared all obligations under Note No. 4180 immediately due and payable.

*Missing Beard Equipment*

38. On October 29, 2020, the Circuit Court of Morgan County, Illinois and the

5

Honorable Judge Christopher Reif in Case No. 2020L17 entered an Order for Replevin for the Beard Equipment in favor of FCS.

39. On December 11, 2020, Woodrum executed an affidavit swearing that the Beard Equipment was in the possession of Beard Implement Company in Ashland, Illinois.

40. Despite its best efforts, FCS never located or recovered the Beard Equipment.

41. Upon information and belief, the Beard Equipment never existed.

42. Upon information and belief, Case IH never manufactured the Beard Equipment.

43. Upon information and belief, the serial numbers listed on the Beard Purchase Order for the Beard Equipment were illegitimate, although they appeared to follow the correct format for Case IH equipment.

44. Upon information and belief, Beard Implement Company never sold the Beard Equipment to Woodrum or anyone else.

45. Upon information and belief, the Beard Purchase Order was forged, not prepared by Beard Implement Company, and not executed by an authorized representative of Beard Implement Company.

46. Upon information and belief, Woodrum previously entered into leases and/or purchase orders with Beard Implement Company for identical makes and models of equipment as that of the Beard Equipment, and the prior leases and/or purchase orders were valid and contained legitimate serial numbers for the equipment.

47. Upon information and belief, both Woodrum and Stroup had access to prior leases and/or purchase orders entered into between Beard Implement Company and Woodrum.

48. Upon information and belief, in addition to prior Beard Implement Company leases and/or purchase orders, both Woodrum and Stroup had access to a blank form purchase order of Beard

6

Implement Company.

***February 27, 2019 Promissory Note and Loan Agreement ("Note No. 0086")***

49.     Prior to February 27, 2019, Woodrum purchased a 2018 Rhino 3150 Shredder, Serial No. 40766, a 2018 Rhino 3150 Shredder, Serial No. 40767, a 2019 Case IH Farmall 45C Tractor, Serial No. 4HJ000099, a 2018 Case IH Farmall 120C Tractor, Serial No. ZHLF50626, a 2019 Case IH Farmall 120 C Tractor, Serial No. VJLF50544, and a 2018 Thunder Creek FST990 Fuel Trailer, VIN No. 56ZL1UG28JP000714 (collectively, "the Prairieland Equipment").

50.     Woodrum previously financed the purchase of the Prairieland Equipment through a loan from Prairieland FS, referred to as "Loan No. XXXX7501."

51.     On February 27, 2019, Woodrum entered into Promissory Note and Loan Agreement No. XXXXX-XXX0086 with FCS, in the principal sum of $184,662.00, to re-finance his purchase of the Prairieland Equipment. A true and correct copy of the Promissory Note and loan Agreement (collectively, "Note No. 0086") is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 6."

52.     Note No. 0086 was expressly cross collateralized with Note No. 4180, the Security Agreement, and the Beard Equipment. (Exhibit A, Ex. 6, p. 2).

53.     On February 27, 2019, Woodrum entered into a Security Agreement with FCS, pledging the Prairieland Equipment as collateral to secure Note No. 0086. A true and correct copy of the Security Agreement is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 7."

54.     On February 28, 2019, FCS filed a UCC-1 Financing Statement with the Illinois Secretary of State, specifically identifying the Prairieland Equipment as its collateral. A true and correct copy of the February 28, 2019 UCC-1 Financing Statement is attached hereto and

incorporated into this Complaint as "Exhibit A, Ex. 8."

55. Woodrum used the funds borrowed from FCS through Note No. 0086 to pay off "Loan No. XXXX7501" from Prairieland FS.

56. On February 27, 2019, Woodrum's other creditor, Prairieland FS executed a Chattel Subordination Agreement, which subordinated Prairieland's liens and security interests it then had or acquired in the future as to the Prairieland Equipment in favor of FCS. A true and correct copy of the Chattel Subordination Agreement for the Prairieland Equipment is attached hereto and incorporated into this Complaint as "Exhibit A, Ex. 9."

57. FCS performed all of its obligations under Note 0086.

58. Pursuant to Section 5 of Note No. 0086, an "Event of Default" occurs if Woodrum fails to make all payments when due. (Exhibit A, Ex. 6, p. 3).

59. Woodrum failed to make the December 1, 2019 annual installment payment required by the terms of Note No. 0086.

60. Woodrum defaulted on Note No. 0086 by failing to make the December 1, 2019 annual installment payment required by the terms thereunder.

61. Pursuant to the terms of Note No. 0086, upon any "Event of Default", FCS may, among other things, declare all obligations immediately due and payable, and take possession of the Beard Equipment. (Exhibit A, Ex. 6, p. 3).

62. On February 27, 2020, as a result of Woodrum's default, FCS declared all obligations under Note No. 0086 immediately due and payable.

*Falsified Documents*

63. Woodrum knowingly, deliberately, intentionally, voluntarily, willfully, fraudulently, wrongfully, maliciously and with actual intent, desire, and purpose to deceive and to

8

injure FCS, and knowing and believing that it was certain that his acts would result in injury to FCS, and without just cause or excuse, misrepresented the existence of the Beard Equipment to FCS.

64. Specifically, Woodrum either delivered or caused Stroup to deliver to FCS the following documents, all of which Woodrum knew, at that time, contained false and fabricated statements of the existence of the Beard Equipment and its purported value:

    a. The handwritten and verified January 4, 2018, FCS Financing Application;

    b. The December 7, 2017 Retail Purchase Order purportedly from Beard Equipment Implement Company; and

    c. The December 19, 2017 "Post harvest update Balance Sheet" listing the Beard Equipment and its purported serial numbers, as "100.00%" owned and purchased by Woodrum in 2017, with a total value of $564,000.00.

(collectively the foregoing documents are referred to as the "Falsified Documents").

65. Woodrum knew his inclusion of the statements of the existence of the Beard Equipment and its purported value in the Falsified Documents would cause injury to FCS.

66. FCS reasonably and justifiably relied on the statements of the existence of the Beard Equipment and its purported value in the Falsified Documents when it extended credit to Woodrum for both Note No. 4180 and Note No. 0086.

67. Absent Woodrum's submission of the Falsified Documents to FCS, FCS would not have extended any credit to Woodrum.

68. Woodrum acted with malicious intent to deceive and to injure FCS when he caused the stated value of the Grain Contracts to be included in the Falsified Documents and delivered (or caused the delivery of) the Falsified Documents to FCS.

69. Woodrum wrongfully, knowingly, deliberately, willfully, maliciously and fraudulently obtained financing from FCS as a direct and proximate result of the use and submission of the stated Falsified Documents.

70. FCS sued Woodrum and others for common law fraud and other related claims in the Circuit Court of Morgan County, Illinois, Case No. 2020L17 (the "State Court Case") based upon the fraud committed by Woodrum's role in fabricating and submitting of the Falsified Documents and FCS's reasonable and justifiable reliance on the contents of the Falsified Documents. A true and correct copy of the State Court Case complaint is attached hereto and incorporated in this Complaint as "Exhibit A."

### COUNT I – NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)

71. FCS repeats, realleges and incorporates the allegations made in the preceding paragraphs as though fully set forth herein.

72. Pursuant to 11 U.S.C. § 523(a)(6), a discharge does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

73. Woodrum acted willfully and maliciously when he fabricated the Falsified Documents and delivered (or caused to be delivered) the Falsified Documents to FCS.

74. By delivering (or causing the delivery of) the Falsified Documents to FCS, Woodrum willfully and maliciously damaged FCS and its property – specifically FCS's money – as FCS provided loans in reliance upon the documents and information supplied by Woodrum.

75. Woodrum's acts were done knowingly and with actual intent, desire and purpose to injure FCS, and without just cause or excuse.

76. Woodrum knew and believed that his acts were certain or substantially certain to result in injury to FCS.

77. Woodrum knew that FCS was certain or almost certain to suffer harm, namely financial loss, as a result of his actions.

78. FCS's damages resulting from Woodrum's willful and malicious injury to FCS and its property is the basis of the State Court Case and is quantified in FCS's proof of claim (Claim No. 6-1).

79. Woodrum's acts render his debt to FCS nondischargeable.

WHEREFORE, Plaintiff FARM CREDIT SERVICES OF AMERICA, PCA respectfully requests that this Court enter a judgment in its favor and against Steven Allen Woodrum and a determination that Woodrum's debt to FCS is nondischargeable pursuant to 11 U.S.C.§523(a)(6), and such other and further relief as this Court deems proper.

**COUNT II – NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(2)(A)**

80. FCS repeats, realleges and incorporates the allegations made in the preceding paragraphs as though fully set forth herein.

81. Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge does not discharge an individual debtor of any debt for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

82. Woodrum committed actual fraud against FCS by fabricating the Falsified Documents and by delivering (or causing the delivery of) the Falsified Documents to FCS.

83. The Falsified Documents contain and/or constitute representations regarding the existence of FCS's collateral and the value thereof, and Woodrum knew those representations were false at the time they were made.

11

84. Woodrum fabricated the Falsified Documents and caused the existence of the Beard Equipment stated value thereof to be included in the Falsified Documents deliberately with the intent and purpose of deceiving FCS as to the existence and value of FCS's collateral.

85. FCS justifiably relied on the existence of the Beard Equipment and the stated value of the Beard Equipment as included in the Falsified Documents.

86. As a proximate result of Woodrum's fabrication of the Falsified Documents containing the false representations and his delivery (or causing the delivery of) the Falsified Documents to FCS, FCS was injured.

87. Woodrum acted with intent to deceive FCS when he fabricated the Falsified Documents and delivered (or caused the delivery of) the Falsified Documents to FCS.

88. FCS's damages resulting from Woodrum's willful and malicious injury to FCS and its property is the basis of the State Court Case and is quantified in FCS's proof of claim (Claim No. 6-1).

89. Woodrum's acts render his debt to FCS nondischargeable.

WHEREFORE, Plaintiff FARM CREDIT SERVICES OF AMERICA, PCA respectfully requests that this Court enter a judgment in its favor and against Steven Allen Woodrum and a determination that Woodrum's debt to FCS is nondischargeable pursuant to 11 U.S.C.§523(a)(6), and such other and further relief as this Court deems proper.

**COUNT III -NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(2)(B)**

90. FCS repeats, realleges and incorporates the allegations made in the preceding paragraphs as though fully set forth herein.

91. Pursuant to 11 U.S.C. §523(a)(2)(B), a discharge does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal or refinancing of

credit, to the extent obtained by use of a statement in writing that is materially false respecting the financial condition of the debtor or an insider of the debtor, that the debtor caused to be made or published with intent to deceive, and on which FCS reasonably and justifiably relied.

92. Woodrum defrauded FCS by fabricating the Falsified Documents and delivering (or causing the delivery of) the Falsified Documents to FCS.

93. The Falsified Documents constitute written statements.

94. The Falsified Documents contained materially false information about the financial condition of Woodrum.

95. Woodrum acted with intent to deceive FCS when he fabricated the Falsified Documents and published them by delivering (or causing the delivery of) the Falsified Documents to FCS.

96. FCS justifiably and reasonably and justifiably relied on the existence of the Beard Equipment and the stated value of the Beard Equipment as included in the Falsified Documents.

97. FCS's damages resulting from Woodrum's use of materially false written statements regarding the financial condition of Woodrum and/or one or more of his insiders which Woodrum caused to be made or published with intent to deceive and on which FCS reasonably and justifiably relied, is the basis of the State Court Case and is quantified in FCS's proof of claim (Claim No. 6-1).

98. Woodrum's acts render his debt to FCS nondischargeable.

WHEREFORE, Plaintiff FARM CREDIT SERVICES OF AMERICA, PCA respectfully requests that this Court enter a judgment in its favor and against Steven Allen Woodrum and a determination that Woodrum's debt to FCS is nondischargeable pursuant to 11 U.S.C.§523(a)(6), and such other and further relief as this Court deems proper.

Dated: October 23, 2023

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS, PLLC

By: /s/ Noah A. Menold
Noah A. Menold (ARDC No. 6317752)
7707 N. Knoxville, Ave., Suite 200
Peoria, IL 61614
nam@h2law.com

*-and-*

James E. Morgan (Fed. I.D. No. 90785074)
200 S. Michigan Ave., Suite 1100
Chicago, IL 60604
312.456.3414
jem@h2law.com

*Attorneys for Farm Credit Services of America, PCA*

4861-8938-2793, v. 4